## DOE Is Reviewing Alternative Ways to Accept Wastes in 2010

Because of the uncertainty of achieving the 2010 goal for opening the Yucca Mountain repository, DOE is examining alternative approaches that would permit it to meet the goal. In May 2001, DOE released a report on potential options for constructing and operating the repository.[15] It is also sponsoring a National Research Council study on possible approaches to developing a repository in stages over a longer duration.

DOE's May report evaluates a range of approaches to developing and operating the repository system and strategies for implementing these approaches. For example, to reduce the uncertainties of receiving substantially higher appropriations needed to open the repository as planned, DOE examined approaches that might permit it to begin accepting wastes at the repository site in 2010 while spreading out the construction of repository facilities over a longer time period. The study recommended developing the repository on a modular basis, separating the rate of accepting wastes at the repository site from the rate of waste emplacement in the underground disposal areas by relying on the surface storage of received wastes until the capacity to move wastes into the repository has been increased. For example, relatively modest-sized surface facilities to handle wastes could be expanded later to handle larger volumes of waste. Such a modular approach, according to the study results, would permit partial construction and limited waste emplacement in the repository, at lower than earlier estimated annual costs, in advance of the more costly construction of the facility as originally planned. Also, by implementing a modular approach, DOE would be capable of accepting wastes at the repository earlier than if it constructed the repository described in documents, such as the Science and Engineering Report that the Secretary would use to support a site recommendation.

In addition, DOE has contracted with the National Research Council to provide recommendations on design and operating strategies for developing a geologic repository in stages, which is to include reviewing DOE's modular approach. The Council is addressing such issues as the

- technical, policy, and societal objectives and risks for developing a staged repository;

[15] See *CRWMS Modular Design/Construction and Operation Options Report* (DOE/OCRWM, TDR-CRW-MD-000002, Rev. 03, May 2001).

- effects of developing a staged repository on the safety and security of the facility and the effects on the cost and public acceptance of such a facility; and
- strategies for developing a staged system including the design, construction, operation, and closing of such a facility.

The Council expects to publish interim and final reports on the study in about March 2002 and December 2002, respectively.

In part, DOE's desire to meet the 2010 goal is linked to the court decisions that the Nuclear Waste Policy Act, as implemented by DOE's contracts with owners of commercial spent fuel, obligated DOE to begin accepting spent fuel from contract holders not later than January 31, 1998, or be held liable for damages. Courts are currently assessing the amount of damages that DOE must pay to holders of spent fuel disposal contracts. Estimates of potential damages for the estimated 12-year delay from 1998 to 2010 range widely from the Department's estimate of $2 billion to $3 billion to the nuclear industry's estimate of at least $50 billion. The damage estimates are based in part on the expectation that DOE would begin accepting spent fuel from contract holders in 2010. The actual damages could be higher or lower, depending on when DOE begins accepting spent fuel.

## Conclusions

In addition to studying the Yucca Mountain site, DOE is taking the other steps, such as public hearings and obtaining NRC's sufficiency comments, that are required for the Secretary to make a site recommendation in the near future. Making a site recommendation at this time, however, may be premature. Under the Nuclear Waste Policy Act and DOE's siting guidelines, a site recommendation and a license application will need to be based on essentially the same data. Furthermore, the act lays out a process with specific time frames that requires DOE to submit a license application to NRC within about 5 to 8 months after the President makes a site recommendation to the Congress. DOE's contractor estimates that it will not have all of the additional information that NRC has said will be needed for an acceptable license application for another 4 years. Waiting until DOE is closer to submitting a license application for the additional information would put DOE in a position to be able to submit a license application that is acceptable to NRC within the time frames set out in the law, and to be able to better respond to questions and challenges that may emanate from the statutory review process subsequent to the President's recommendation.

Another benefit of waiting for the additional technical information is that the repository's design and development schedule described in the documents that support a site recommendation may not describe the facilities that DOE would actually develop. These documents generally describe surface and underground facilities that DOE would design and build on a schedule permitting it to open the repository in 2010. This schedule, however, is unrealistic if one assumes that DOE's existing prelicensing and construction time frames continue to be valid. This uncertainty is compounded by questions about whether DOE can obtain the increases in annual funding required to meet its schedule. On the other hand, a compelling incentive exists to open the repository in 2010 because DOE is liable for damages, in amounts not yet determined by the courts, for not beginning to accept utilities' spent fuel by 1998. The damage amounts will in part be based on when DOE can begin to accept and deliver spent fuel to the repository. For these reasons, DOE is exploring alternative approaches to developing a repository, such as initially storing spent fuel at the repository site before constructing underground disposal facilities that could still enable it to accept spent fuel by 2010. Thus, deferring a site recommendation until DOE has substantially completed the remaining technical work needed for an acceptable license application would also enable DOE to complete its consideration of alternative approaches to developing a repository at Yucca Mountain. DOE could then ensure that the site recommendation is based on the approach that the Department intends to follow. This would enable DOE to develop the estimated schedule to design and build the preferred approach and estimate its cost, including the annual funding requirements, as part of the information on which to make a site recommendation.

DOE needs to reestablish a baseline for the nuclear waste program that accounts for all of the outstanding technical work needed to prepare an acceptable license application and the estimated schedule and cost to achieve this milestone. In conjunction with reestablishing a baseline for the program, DOE needs to resume using the baseline as a tool for managing the program, in accordance with the Department's policies and procedures for managing major projects.

## Recommendations for Executive Action

To ensure that DOE will be prepared to submit an acceptable license application within the timeframes set out in the Nuclear Waste Policy Act, the Secretary of Energy should consider (1) deferring a site recommendation until it can meet the express statutory time frames that are triggered by a site recommendation by the President to the Congress and (2) including the results of DOE's ongoing technical work for NRC and

the results of analyses of alternative approaches to the proposed repository in the Secretary's comprehensive statement of the basis for a site recommendation.

To improve the management of the nuclear waste program and to provide the Congress and the public with accurate information on the repository program, we further recommend that the Secretary of Energy

- reestablish the baseline for the nuclear waste program through the submission of a license application, including incorporating the remaining technical work required to submit the application and the estimated cost and schedule to complete this work, and
- follow the Department's requirements for managing major programs and projects, including a formal change control procedure.

## Agency Comments and Our Evaluation

We provided DOE with a draft of this report for review and comment. DOE disagreed with our report, contending that we did not understand the relevant statutory and regulatory requirements related to a site recommendation. Bechtel, DOE's management contractor, also provided us with a letter asserting unspecified factual and legal inaccuracies in our draft report; however, the company added that it would provide specific comments through DOE. While it was not clear from DOE's comments which ones had come from Bechtel, we are responding to all comments received on the following pages. According to DOE, our misunderstanding of the requirements resulted in a contention in the draft report that it is premature for DOE to make a site recommendation because all the technical work for license application is not complete. (DOE's comments are in app. II.) We agree that the Secretary has the discretion to make such a recommendation at this time; however, we question the prudence and practicality of making such a recommendation at this time, given the express statutory time frames for license application and the significant amount of work remaining to be done for NRC to accept a license application from DOE. Our conclusion is based on the relationship between a site recommendation and DOE's readiness to submit an acceptable license application to NRC, as set out in DOE's siting guidelines and the Nuclear Waste Policy Act. The preamble to DOE's siting guidelines states that DOE expects to use essentially the same data for a site recommendation and a license application. Also, the Nuclear Waste Policy Act states that a presidential site recommendation is to be made if the President considers the site qualified for a license application and sets out a time frame that could be as short as 5 to 8 months from a presidential site recommendation to a license application. This includes

the requirement that the Secretary of Energy submit a license application not later than 90 days following congressional approval of the site. Thus, the statutory time frame is decidedly shorter than the 4-year estimate between site recommendation and license application that was recently proposed by DOE's management contractor.

DOE also pointed out the difference between the decision at hand—determining whether a potential site is licensable—and the licensing by NRC of a repository facility at the site. The latter decision would come at the end of a 3- to 4-year licensing proceeding. In contrast, our report addresses the relationship between a site recommendation and the submission of the license application.

DOE said that our draft report incorrectly states that DOE's siting guidelines require the Secretary, in making a site recommendation, to determine if the site currently complies with NRC's licensing requirements rather than determining if the site is "likely" to meet NRC's radiation protection standards. We agree that the standard in DOE's guidelines is "likely" and have added this language to the report. The report accurately states the relationship between a site recommendation and a license application under the Nuclear Waste Policy Act and the siting guidelines.

In addition, DOE stated that the Nuclear Waste Policy Act charges the Secretary with establishing criteria for determining the suitability of a site for a repository and that the Department's standards (siting guidelines) are the most important legally relevant guidance on the question of whether the Department is ready to make a site recommendation. Our report, DOE said, ignores these standards and instead asserts a standard of our own devising. Contrary to DOE's assertion, we did not evaluate DOE's performance against a standard we devised. We used the Nuclear Waste Policy Act and DOE's standards—that the site is likely to meet NRC's radiation protection standards—for a site suitability recommendation. Moreover, a presidential site recommendation triggers statutory time frames that require DOE to submit a license application to NRC within about 5 to 8 months. Thus, our conclusion regarding whether DOE should make a site recommendation relies on both the relationship between the standards for site recommendation and license application and the statutory time frames. While recommending to the President that the Yucca Mountain site is suitable for a repository is within the discretion of the Secretary of Energy, such a recommendation may be premature because of the large number of technical issues remaining to be resolved before an acceptable license application can be filed with NRC.

DOE also stated that NRC's licensing process is an iterative and continuous process; even the license application is not expected to be "set in concrete." We agree with DOE's statement. The important point, however, is that DOE and NRC have made 293 specific agreements on technical work that DOE will need to complete and incorporate into a license application that would be acceptable to NRC. This also assumes that no new issues surface that would need to be addressed.

DOE said that our draft report emphasized the inventory of issues between DOE and NRC but completely ignored the technical work that has been done over the past 2 decades and the technical groups who have said that DOE's data are sufficient for a site recommendation. We have added information to the report recognizing the body of work that DOE has completed to date and the views of other technical parties mentioned by DOE. As discussed above, however, the central issue is not whether technical parties are of the opinion that DOE has enough information for a site recommendation but the relationship, in statute and regulation, between the site recommendation and the submission of an acceptable license application.

DOE also said our report gives short shrift to NRC's recent "sufficiency letter" that, according to DOE, memorializes NRC's conclusion that the data and analyses existing and under way likely will be sufficient for a license application. Instead, DOE added, our report over-relies on the views of an NRC advisory committee. Our characterization of NRC's sufficiency comments is accurate. NRC did state that the agreements between DOE's and NRC's staffs regarding the collection of additional information provide the basis for concluding that the development of an acceptable license application is achievable; however, NRC conditioned this comment on DOE's successful completion of "significant" additional work prior to a license application. Also, the Nuclear Waste Policy Act does not refer to work "underway," but uses the phrase "seem to be sufficient." Finally, we included the views of NRC's advisory committee because NRC's letter included these views.

In addition, DOE stated that our report prominently emphasizes the views of the Board as requiring the Department to accommodate them before a site determination is made. DOE added that the report does not emphasize that the substance of the Board's criticisms is directed to licensing—not site recommendation. Contrary to DOE's assertion, we did not assert that DOE is "required" to accommodate the Board. We discussed the Board's continuing concerns as outlined in its October 2001 letter to DOE. In that letter, the Board noted that gaps in data and

analyses make the evaluation of DOE's technical bases on whether to recommend the site—not apply for a license—more difficult. Also, we gave the Board's current concerns about DOE's site characterization work, as summarized in its October letter, prominent mention in our report because of the Board's statutory mission to independently evaluate the technical and scientific validity of DOE's investigation of Yucca Mountain.

Finally, DOE said that our statement that delaying a site recommendation decision will have no effect on the timing of the ultimate opening of a repository is contrary to all common sense and experience. We have removed that statement from the report. However, we note that the key factors that bear on opening a repository currently lie in the licensing arena. One such factor is the 4 more years of licensing-related work that Bechtel, in its September 2001 detailed reassessment that proposed a new cost and schedule baseline, estimates would be needed to submit a license application that is acceptable to NRC. In addition, other licensing-related conditions could continue to affect the timetable for developing a repository. For example, Bechtel characterized its reassessment leading to the submission of a license application in January 2006 as a high-risk schedule that does not include any contingency or reserve—in effect, an optimistic schedule. Also, NRC, in its preliminary comments on the sufficiency of site characterization, stated that if DOE adopts a low-temperature repository operating approach, such as described in a recent technical document, then additional information would be needed for a potential license application.

Although we have clarified our discussion of the statutory and regulatory requirements for site recommendation, approval, and licensing, we continue to believe that the Secretary of Energy should consider the timing of this statutory process as he decides when to make a site recommendation to the President. Therefore, while we have modified the language, we have not changed the intent of our recommendation on this matter. DOE did not comment on our findings, conclusions, and recommendations about (1) potential delays on, and alternatives to, its proposed repository design and (2) its management of the nuclear waste program.

## Scope and Methodology

We performed our review at DOE's headquarters in Washington, D.C., and its project office in Las Vegas, Nevada. We also met with officials of NRC in Rockville, Maryland; the Nuclear Waste Technical Review Board in Clarendon, Virginia; and the state of Nevada's Agency for Nuclear Projects in Carson City, Nevada. We conducted our review from April through