December 2001 in accordance with generally accepted government auditing standards. (See app. I for details of our scope and methodology.)

We will send copies of this report to the Secretary of Energy; the Director, Office of Management and Budget; and other interested parties. We will make copies available upon request. If you or you staff have any questions about this report, please call me at (202) 512-3841. Key contributors to this report are listed in appendix III.

Gary L Jones

(Ms.) Gary L. Jones
Director, Natural Resources
and Environment

# Appendix I: Objectives, Scope, and Methodology

Our objectives for this report were to determine whether (1) the Department of Energy (DOE) has completed the work necessary to support a site recommendation for the development of a repository at Yucca Mountain, and (2) DOE's goal of opening a repository at Yucca Mountain in 2010 is reasonable.

To determine whether DOE, through its Office of Civilian Radioactive Waste Management (OCRWM), has completed the work necessary to support a site recommendation, we discussed with DOE officials the nature and extent of such work and their relationship to the two processes. We also discussed technical issues still outstanding with staff of the Nuclear Waste Technical Review Board, the Board's Chairman, and the staff of the Nuclear Regulatory Commission's (NRC) Office of Nuclear Materials Safety and Safeguards. We analyzed the Board's annual reports and other correspondence to DOE, and summarized issues of concern affecting a site recommendation raised by the Board to DOE. We also reviewed documents obtained from NRC to identify key technical issues affecting readiness to submit an acceptable license application. We visited DOE's Yucca Mountain Site Characterization Office in Las Vegas, Nevada, and interviewed officials in that office on the Department's response to the issues raised by the Board and NRC. We also reviewed project management documents at OCRWM's headquarters and at the project office to identify and characterize how OCRWM's response to the issues raised had been incorporated into the project's work plans and guidance to the office's management contractor for the nuclear waste program. We interviewed officials of Bechtel SAIC Company, LLC, DOE's management contractor, and obtained and analyzed documents prepared by the contractor—such as its September 2001 detailed reassessment of the nuclear waste program—to determine how ongoing and future project work would address these issues, and the subsequent effects on the project schedule and milestones.

To determine whether DOE's goal of opening a repository at Yucca Mountain in 2010 was reasonable, we analyzed OCRWM's reports and project documents. We interviewed officials in OCRWM's headquarters and the project office to determine how total project and program costs had been captured, estimated, and reported to the Congress and the public. We summarized the estimated program costs and associated reasons for the milestones and changes over time. We also determined the procedures used by DOE to revise its cost and schedule estimates for site recommendation and license application, and assessed its use of those procedures.

Our work was conducted from April through December 2001, in accordance with generally accepted government auditing standards.

# Appendix II: Comments From the Department of Energy

**The Under Secretary of Energy**
**Washington, DC 20585**

December 5, 2001

The Honorable David M. Walker
Comptroller General
U.S. General Accounting Office
441 G Street, N.W.
Washington, D.C. 20548

Dear Mr. Comptroller General:

The Department has received, by November 28 letter, the General Accounting Office's proposed report, "Nuclear Waste: Technical, Schedule, and Cost Uncertainties on the Yucca Mountain Repository Project." The proposed report addresses the question whether the Department of Energy is ready to make a recommendation to the President regarding whether Yucca Mountain is a suitable site for a potential repository -- a recommendation the Secretary of Energy is called upon to make by the Nuclear Waste Policy Act of 1982.

Let me emphasize at the outset that, press reports to the contrary, the Secretary has not decided on a firm time frame for determining whether or not to recommend Yucca Mountain for this purpose, let alone having decided what the content of such a recommendation might be. That being said, the Department believes the approach the proposed report takes to these issues is profoundly flawed for reasons we explain below.

The proposed report asks, in effect, "why now?" about making a site determination regarding the Yucca Mountain project. What it realistically leaves unanswered is "then when?" should the results of years of scientific inquiry reveal that the Secretary of Energy and the President have enough information to make their determinations on the merits. The Nuclear Waste Policy Act instructs that the Secretary's recommendation is to be made under Department siting guidelines that use the standard that a facility at the site is likely to meet NRC radiation protection standards, and after receiving the conclusion of the NRC whether the information developed and underway will be sufficient for a license application. The NRC recently rendered the sufficiency advice called for by the Act.

Avoidance of a timely decision -- should it be otherwise called for on its merits -- would be a dereliction of duty owed to current and future generations of Americans to pursue with thoughtful expedition the task of making safe all high

2

level nuclear waste. Because the proposed report is a "Brandeis brief" for delay, we must in these comments critically evaluate its major points.

The central contention of the proposed report is that it is premature for the Department to make a site recommendation for Yucca Mountain because the Department has yet to complete all the remaining technical work needed for a license application. This contention reflects a profound lack of understanding of the statutory and regulatory requirements based on an inaccurate depiction of their context.

First, the decision at hand involves determining a potential site, not the licensing of a facility. The construction and operation of a facility – here the repository – would be licensed by the Nuclear Regulatory Commission after site determination. The site itself is not licensed; instead its features may affect design of the facility which is licensed. Thus determining a site must occur before beginning the licensing procedure.

That is why the Nuclear Waste Policy Act specifically envisions two distinct decisions: one by the President, on the advice of the Secretary of Energy, as to whether a hypothetical repository at Yucca Mountain is potentially licensable by the NRC; then one by the NRC as to whether a proposed repository, complete with design specifications, should be allowed to be built and ultimately operate there.

Second, the proposed report misstates, in its brief treatment of them, the Department's siting guidelines as requiring the judgment that the site currently complies with NRC licensing requirements. Not only is this not what the Department's guidelines require, but during the notice and comment rulemaking held on them over a period many years, not a single commenter suggested that the Department adopt such a standard. Rather, consistent with the structure outlined above, the Department's guidelines call for the judgment that a facility at the site is likely to meet NRC radiation protection standards – a predictive judgment that inherently embraces the existence of incompletely resolved potential licensing issues.

Third, because the NWPA charges the Secretary with establishing "criteria to be used to determine the suitability of [a] site for the location of a repository," the Department's standards – in which the NRC has concurred, as the NWPA also requires – provide the most important legally relevant guidance on the question whether the Department is ready to make a site recommendation. Yet the proposed report, despite purporting to answer that question, ignores these standards altogether and instead evaluates the Department's readiness against a standard of its own devising.

Fourth, the NRC licensing process is one that the NRC has described as "iterative" and an "integrated and continuous process." That means that even the license application envisioned by the NWPA was not expected to be set in concrete on its submission but was instead expected to experience refinement and amendment during the licensing process, as was indicated in the NRC regulations in effect when the Nuclear Waste Policy Act was adopted by Congress in 1982.

Fifth, the proposed report affords heavy and central emphasis to the existence of an inventory of issues as to which the Department has agreed with the NRC further to develop for licensing purposes. At the same time it completely ignores the enormous body of scientific and technical work completed regarding the site over the last two decades, including the inventory of some 600 papers cited in the Department's May, 2001 Science and Engineering Report on Yucca Mountain. Nor does the proposed report touch upon – or even acknowledge the existence of – the substantial body of recent, directly relevant analytic literature published by the Department, including the 1998 Viability Assessment, the 2001 Preliminary Site Suitability Evaluation, the 2001 Supplemental Science and Performance Analyses, the 1999 Draft Environmental Impact Statement, and the 2001 Supplement to the Draft EIS.

Much less does the proposed report attempt to evaluate the significance of the unresolved issues as compared with those that have been addressed and resolved in assessing the appropriate timing for a site recommendation. Nor does it address the recent formal conclusions of independent, technically-literate bodies like the U.S. Geological Survey, the International Peer Review Team of the International Atomic Energy Agency and the Organization of Economic Cooperation and Development's Nuclear Energy Agency, and the Energy Committee of the Council on Engineering of the American Society of Mechanical Engineers. In substance each of these has advised the Department that, from the standpoint of the disciplines within its institutional expertise, the information adduced to date is sufficient for a site recommendation.

Sixth, the proposed report gives short shrift to the NRC's recent "sufficiency letter," that memorializes a site determination judgment called for specifically by the Nuclear Waste Policy Act to the effect that the NRC has concluded that the data and analyses existing and underway likely will be sufficient for a license application. Instead the proposed report centers its attention on views attributed to an advisory committee to the NRC, ignoring that it is the NRC, rather than any of its individual or collective advisors, that is responsible under the Nuclear Waste Policy Act (as in all else) for the conduct of its statutory functions.

Seventh, and in a similar vein, the proposed report prominently emphasizes the views of the Nuclear Waste Technical Review Board as requiring the Department to accommodate them before a site determination is to be made. The Department regards the Board's advice as extremely valuable and anticipates continuing to

4

receive that advice throughout the entirety of the program. Nonetheless, beyond this advisory function, Congress gave the Board no formal role in the siting process when it established this body. And in any event what is not emphasized in the proposed report is that the substance of the Board's criticisms is directed to factors that bear on licensing the facility, not the identity of the site.

Finally, the proposed report asserts that delaying a site recommendation decision will have no effect on the timing of the ultimate opening of a repository. That is contrary to all common sense and experience. Yet this assertion plays a critical role in the structure of the report. Had the report made the only realistic assumption on this question – that delay on site recommendation will indeed lead to delay in opening a repository – it would have had to come to grips with the costs as well as the benefits of delay. For example: high level radioactive waste is currently stored in surface facilities at 129 sites in 39 States around the country, with attendant vulnerabilities. Yet the report gives no weight to the interests of the communities where this waste in located in having a decision on a site for a repository made promptly one way or the other as soon as it can be made responsibly.

We look forward to working with the GAO on this important issue.

Sincerely,

Robert G. Card /ejf

Robert G. Card

# Appendix III: GAO Contact and Staff Acknowledgments

## GAO Contact

Dwayne E. Weigel (202) 512-6876

## Acknowledgments

In addition, Daniel J. Feehan, Robert E. Sanchez, John C. Furutani, Jonathan S. McMurray, Lindy Coe, Doreen S. Feldman, and Susan W. Irwin made key contributions to this report.

## GAO's Mission

The General Accounting Office, the investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability.

## Obtaining Copies of GAO Reports and Testimony

The fastest and easiest way to obtain copies of GAO documents is through the Internet. GAO's Web site (www.gao.gov) contains abstracts and full-text files of current reports and testimony and an expanding archive of older products. The Web site features a search engine to help you locate documents using key words and phrases. You can print these documents in their entirety, including charts and other graphics.

Each day, GAO issues a list of newly released reports, testimony, and correspondence. GAO posts this list, known as "Today's Reports," on its Web site daily. The list contains links to the full-text document files. To have GAO e-mail this list to you every afternoon, go to www.gao.gov and select "Subscribe to daily e-mail alert for newly released products" under the GAO Reports heading.

### Order by Mail or Phone

The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to:

U.S. General Accounting Office
P.O. Box 37050
Washington, D.C. 20013

| | | |
|---|---|---|
| To order by Phone: | Voice: | (202) 512-6000 |
| | TDD: | (202) 512-2537 |
| | Fax: | (202) 512-6061 |

### Visit GAO's Document Distribution Center

GAO Building
Room 1100, 700 4th Street, NW (corner of 4th and G Streets, NW)
Washington, D.C. 20013

## To Report Fraud, Waste, and Abuse in Federal Programs

Contact:

Web site: www.gao.gov/fraudnet/fraudnet.htm,
E-mail: fraudnet@gao.gov, or
1-800-424-5454 or (202) 512-7470 (automated answering system).

## Public Affairs

Jeff Nelligan, Managing Director, NelliganJ@gao.gov (202) 512-4800
U.S. General Accounting Office, 441 G. Street NW, Room 7149,
Washington, D.C. 20548



PRINTED ON RECYCLED PAPER



Viability Assessment of a Repository at Yucca Mountain

# Overview

U.S. Department of Energy

Office of Civilian Radioactive Waste Management

DOE/RW-0508

DOE/RW-0508

# Viability Assessment of a Repository at Yucca Mountain

## Overview

December 1998



U.S. Department of Energy
Office of Civilian Radioactive Waste Management
Yucca Mountain Site Characterization Office

This publication was produced by the U.S. Department of Energy
Office of Civilian Radioactive Waste Management.

For further information contact:
U.S. Department of Energy
Yucca Mountain Site Characterization Office
P.O. Box 30307
North Las Vegas, Nevada 89036-0307

or call:
Yucca Mountain Information Center
1-800-225-6972

or visit:
Yucca Mountain Site Characterization Project website
http://www.ymp.gov

Printed with soy ink on recycled paper.

# Contents

**Introduction**

The Viability Assessment ........ 1
Results in brief ........ 2

**Background**

The nuclear waste problem ........ 4
Geologic disposal ........ 6
The law and the regulations ........ 8
How geologic disposal would work ........ 9
Why Yucca Mountain? ........ 10

**Reference design**

The design process ........ 12
The reference design ........ 13

**Performance assessment**

Performance assessment models ........ 18
The attributes of safe disposal ........ 19
Possible dose ........ 24
Other safety issues ........ 25
What we are learning ........ 26

**License application**

Plan to complete a license application ........ 27
Operational safety ........ 28
Long-term safety ........ 29

**Estimated cost**

Cost of licensing, building, operating, monitoring, and closing a repository ........ 32
Repository costs ........ 33
Total system life cycle costs ........ 34
Who pays? ........ 35

**Conclusion**

Concluding observations ........ 36

**Back matter**

Endnotes ........ 38
Glossary ........ 40
Acronyms ........ 42

iv

# The Viability Assessment

The U.S. Department of Energy (DOE) has been studying a site at Yucca Mountain, Nevada, for more than 15 years to determine whether it is a suitable place to build a geologic repository for the nation's commercial and defense spent nuclear fuel and high-level radioactive waste. This overview presents the results of DOE's study to date.

In 1996, DOE announced that it would complete in 1998 a viability assessment of the Yucca Mountain site that would describe the following:

- The preliminary design concept for the critical elements of a repository and waste package
- A total system performance assessment, based on the design concept and the scientific data and analyses available by 1998, that describes the probable behavior of a repository in the Yucca Mountain geologic setting
- A plan and cost estimate for the remaining work required to complete and submit a license application to the Nuclear Regulatory Commission
- An estimate of the costs to construct and operate a repository in accordance with the design concept

In the 1997 Appropriations Act,[1] Congress required DOE to prepare the viability assessment.

The purpose of the viability assessment is to provide Congress, the President, and the public with information on the progress of the Yucca Mountain Site Characterization Project. The assessment also identifies the critical issues that need to be addressed before a decision can be made by the Secretary of Energy on whether to recommend the Yucca Mountain site for a repository.

This overview of the *Viability Assessment of a Repository at Yucca Mountain* describes the nuclear waste problem and explains why the United States and other nations are considering deep geologic disposal as the solution. The overview describes why the United States is considering Yucca Mountain and how a monitored geologic repository would work in the mountain. It presents a repository design, an assessment of its expected performance, and an evaluation of the possible effects on people living near Yucca Mountain. Also presented is the work remaining to be completed prior to a license application, along with the estimated cost of building and operating a geologic repository at Yucca Mountain. Finally, based on the information in the viability assessment, the overview concludes with DOE's assessment of whether work at Yucca Mountain should proceed.