# DILWORTH PAXSON LLP

A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA

LAW OFFICES

Frank V. Tedesco
New Jersey Managing Partner

DIRECT DIAL NUMBER:
(856) 317-7012

Francis P. Maneri
fmaneri@dilworthlaw.com

May 4, 2004

**VIA FACSIMILE 202/219-9521**
Senior Judge James F. Merow
United States Court of Federal Claims
717 Madison Place, N.W.
Washington, D.C. 20005

RE: **Maine Yankee Atomic Power Company v. United States of America**
**Docket No. 98-474C**

**Subpoena Issued to Non-Party, Holtec International**
**Our File No. 20397-75174**

Dear Judge Merow:

This firm represents Holtec International, the non-party recipient of a subpoena issued by the Defendant in connection with the above-captioned matter. As discussed with your office today, I am enclosing a Certification (with exhibits) executed by Eric G. Lewis, Project Manager of Holtec International in anticipation of the conference call scheduled for tomorrow at 11:30 a.m.

By copy of this letter, I am faxing this letter and the enclosed Certification (with exhibits) to Kevin B. Crawford, Esquire, and Victoria Strohmeyer, Esquire at the U. S. Department of Justice and to Robert Shapiro, Esquire, counsel for Plaintiff.

Your Honor's time and attention to this matter is greatly appreciated.

Respectfully yours,

Francis P. Maneri

Francis P. Maneri

FPM/lf
Enclosure
cc: Kevin B. Crawford, Esquire (via facsimile (202/307-2503 w/encl.)
Victoria L. Strohmeyer, Esquire (via facsimile (202/305-7643 w/encl.)
Robert Shapiro, Esquire (via facsimile (202/682-1639 w/encl.)

THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MAINE YANKEE ATOMIC POWER COMPANY, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant. | Docket No. 98-474C (Senior Judge James F. Merow) |

CERTIFICATION OF ERIC G. LEWIS

PROJECT MANAGER, HOLTEC INTERNATIONAL

Eric G. Lewis, of full age, hereby certifies as follows:

1. I am employed as a Project Manager for Holtec International, the non-party recipient of a subpoena issued by the United Stated in the above-captioned matter. I have been employed by Holtec since 1999. Holtec employs approximately forty-five employees and is a diversified energy technology company, providing goods and services primarily to the power industry, including a majority of the nuclear power plants in the United States, as well as overseas.

2. I have reviewed the Order filed by this Court on February 20, 2004 as well as the subpoena issued by the United States to Holtec and Holtec's response thereto. I have also reviewed the Motion filed by the Defendant and Holtec's response thereto.

3. In the Court's Order filed on February 20, 2004, the Court stated that it is reasonable to confine the non-party discovery involved to any contracts actually entered into by Holtec for projects or material of some similarity to those undertaken or received by Plaintiff (which also includes Yankee Atomic and Connecticut Yankee). The Court also indicated that the time frame for the documents to be produced should be confined to the time periods covered by Plaintiff's projects.

4. The Order further provides that counsel shall confer to reach agreement on the documents to be produced, in response to Requests Nos. 27 and 28, as confined in the Order. Requests Nos. 27 and 28 are repeated herein as follows:

> <u>REQUEST NO. 27</u>:
>
> This request applies to any decommissioning or ISFSI projects by any utility, including but not limited to the Yankees: All documents (including but not limited to correspondence) relating to solicitations; requests for offers; cost inquiries; offers; responses to any request(s) for offers, solicitation(s), or cost inquiries, bid tabulations, bid comparisons, and bid evaluations pertaining to decommissioning of a nuclear power plant, and/or construction of an ISFSI.
>
> <u>REQUEST NO. 28</u>:
>
> This request applies to any decommissioning or ISFSI projects by any utility, including but not limited to the Yankees: All records and documents relating to the procurement, fabrication, and delivery of material and equipment to any nuclear power plant decommissioning and/or ISFSI construction projects.



4317

5. Subsequent to the entry of the Order, it is my understanding that the Defendant has taken the position that the time frame involved is from 1995 to date. Furthermore, the Defendant believes that any project for which Holtec provided HI-STORMs to a utility is "similar" to those undertaken or received by Plaintiff. Thus, in the conference call held on April 30, 2004, the Defendant requested a copy of Holtec's contract with eleven (11) utilities, without doing an analysis of each project to determine if it is similar to Maine Yankee. Rather, the Defendant has requested a copy of any contract wherein Holtec has provided vertical storage systems to a utility.

6. For the Court's benefit, a HI-STORM is a steel clad concrete cylinder that, along with a stainless steel canister (a Multi-Purpose Canister [MPC]), is used by utilities to store spent nuclear fuel assemblies. Holtec developed the HI-STORM after many years of design and engineering and has been selling HI-STORMs to utilities since approximately 1999.

7. Holtec believes that the Defendant's reading of the Order is unreasonable since it does not give any effect to the Court's restriction that only contracts similar to those undertaken or received by the Plaintiff during the relevant time frame are to be produced.

8. Holtec was not the successful bidder at the Maine Yankee projects. Holtec does have copies of the bids it submitted with respect to the Maine Yankee project and produced those documents to the Defendant on April 27, 2004. Of course, these documents are directly related to the project actually undertaken by Maine Yankee.

9. A major distinction between the Maine Yankee project and many other projects is that Maine Yankee involved a pressurized water reactor while other systems involve a boiling water reactor. The design and engineering for a pressurized water reactor is

substantially different than the design and engineering for a boiling water reactor. Therefore, contracts with utilities which use a boiling water reactor are not similar those undertaken or received by the Plaintiff. These contracts include Hatch, River Bend, CGS, Browns Ferry and Fitzpatrick, all of which have been requested by the Defendant (but utilize a boiling water reactor unlike the pressurized water reactor at Maine Yankee).

10. It is Holtec's understanding that Maine Yankee first entered into a cask development contract in approximately 1997-1998. Defendant's request for documents beyond that time frame is unreasonable because the current commercial market is completely different than the market in 1997/1998 given the change in demand for dry storage and the change in companies involved in supplying dry spent fuel storage systems.

11. Additionally, Maine Yankee was seeking to contract, through architect/engineering firms, for the supply of 61 systems. Holtec does not have a contract for quantities near that volume, thus they are all dissimilar in this respect.

12. The Maine Yankee project involved many site-specific license parameters, as opposed to a generic license typical of many of Holtec's projects. That is, for the Maine Yankee project, the dry storage contractor was required to develop the design for the dry storage system, overpacks and multipurpose casks and to perform various analyses to show compliance with NRC mandated regulations. This design was incorporated into a license application submitted to the NRC for approval. Since 1999, a general license has been issued to Holtec for its HI-STORMs and MPC. There is a substantial qualitative difference between a contract requiring a site-specific license as opposed to a contract requiring a general license and the two types are completely dissimilar.

13. Since 1999, Holtec has been involved in only three projects involving site-specific licenses, being Trojan, Diablo Canyon and Humboldt Bay. However, at Humboldt Bay, Holtec only provided HI-STARs, an all-metal cask system for storage and transportation of spent nuclear fuel. It is understood that the Defendant is not interested in any documents relating to HI-STAR. The Diablo Canyon project involved a site-specific design with a firm commitment for only 8 systems. The HI-STORMs are also anchored to the ISFSI pad due to the high seismic nature of the site. For these reasons, Diablo Canyon is not similar to the dry storage system deployed at Maine Yankee.

14. Defendant has requested Holtec's contract for the decommissioned Trojan Nuclear Plant in Oregon as an example of a project that is similar to the projects undertaken by the Plaintiff. However, Holtec did not provide any concrete overpacks to Trojan and did not perform the design work for the independent spent fuel storage installation (ISFSI) at Trojan. Rather, British Nuclear Fuel performed the ISFSI work at Trojan. Holtec modified a multipurpose cask to fit inside a concrete overpack that was designed and provided by British Nuclear Fuel. The British Nuclear Fuel concrete overpack is similar to that used at Maine Yankee, however, Holtec does not have cost information concerning that overpack.

15. Holtec did provide HI-STORMs to Entergy at Arkansas Nuclear One (ANO), which utilizes a pressurized water reactor. However, this was in the year 2003-2004, which is outside of the time frame of the Maine Yankee contracts. Additionally, Holtec did not perform any ISFSI design, construction or cask loading services for the ANO since it had already been designed. Rather, Holtec provided the HI-STORMs and MPC-24s to ANO, but the design of the MPC-24s were specific to ANO and not Holtec's generic design. Note,

however, the system deployed at ANO prior to the HI-STORM system is similar to that deployed at Maine Yankee.

16. Additionally, when Holtec submitted its bid to Maine Yankee in 1998, the HI-STORM was conceptual and was still in the licensing phase. The license for the HI-STORM was not received until May 2000 and the first HI-STORM was not fabricated until December 2000. Since 1998, the HI-STORM has gone through several significant design changes.

17. The Defendant has requested the Fitzpatrick contract and as indicated above, Fitzpatrick utilizes a boiling water reactor. In addition, Fitzpatrick received a shortened HI-STORM unique to the site and not used elsewhere.

18. A summary of the contracts requested by the Defendant, the year executed with Holtec and the dissimilarities with Maine Yankee is attached hereto as Exhibit "A".

19. Finally, Holtec is extremely concerned that production of its contracts will reveal confidential information which is highly sensitive and which can be used by its competitors at a time when the dry storage market is extremely competitive. This was acknowledged in Judge Hodges' order of February 26, 2004 (attached as Exhibit "B") which states in part "whatever relevance they may have to defendant's case, it would be outweighed by the business risks of making them part of this trial."

I hereby certify that the forgoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Eric G. Lewis, Project Manager
Holtec International

Dated: May 4, 2004



1317_1

# EXHIBIT A

| Contract | ISFSI Pad Design in Contract | Year Executed | Dissimilarities with Maine |
|---|---|---|---|
| Diablo Canyon | N | July 2001 | Diablo required a site-specific design and an anchored cask unique to Diablo. Contract was for 8 casks |
| Farley | N | January 2002 | Farley will be receiving the new HI-STORM 100S version B design |
| ANO | N | Sept 2000 & March 2003 | ANO was brought into a system-wide Entergy contract in 2003. We have provided MPC-24's to ANO but the design was specific to ANO and not our generic design. ANO will be receiving the new HI-STORM 100S version B design |
| PGE – Trojan | N | March 2001 | Trojan received a site-specific license that utilized an uniquely designed MPC for insertion into a VCC provided by others |
| Sequoyah | Y | November 2001 | Farley will be receiving the new HI-STORM 100S version B design |
| Hatch | N | January 1998 | Hatch is a BWR |
| River Bend | N | Sept 2000 & March 2003 | River Bend is a BWR. River Bend will be receiving the new HI-STORM 100S version B design |
| CGS | Y | March 1999 | CGS is a BWR. CGS received the HI-STORM 100S |
| Browns Ferry | | November 2001 | Browns Ferry is a BWR. Browns Ferry will be receiving the new HI-STORM 100S version B design |
| Fitzpatrick | N | July 1999 | Fitzpatrick is a BWR. Fitzpatrick received a shortened HI-STORM unique to the site and not use elsewhere |
| Indian Point | N | April 2003 | No systems have been delivered to date. Indian Point will be receiving the new HI-STORM 100S version B design |

Boiling Water Reactor

**General Comments**

- Holtec bid the Maine Yankee RFP for dry storage systems and lost.
- The Maine Yankee request was for 61 dry storage systems. None of our existing contracts have commitments for any more than eight systems for single unit. The Trojan contract was for 34 MPC's and no HI-STORMs.

- The Maine Yankee quote was presented when the HI-STORM was conceptual and was still in the licensing phase. At that time no HI-STORM had been fabricated. The license for HI-STORM was not received until May 2000 and the first HI-STORM was not fabricated until December 2000.
- Typically, specifications and thus contracts vary so widely it is impossible to compare individual prices from one contract to other contracts. Variations can include system quantities, system wide contracts, overall workscope ( pad design, pool to pad, only HI-STORM system included in contract, contract duration...)

# EXHIBIT B

# In the United States Court of Federal Claims

FILED
FEB 26 2004
U.S. COURT OF FEDERAL CLAIMS

* * * * * * *

INDIANA MICHIGAN POWER CO., *

Plaintiff, * No. 98-486C

v. * Filed: February 26, 2004

UNITED STATES OF AMERICA, *

Defendant. *

* * * * * * *

## ORDER

The parties discussed several pretrial issues at a hearing yesterday, as follows:

1. DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EXHIBITS OR TO DELAY TRIAL. Delaying trial does not serve anyone's interests. Plaintiff's experts could have offered the new calculations in response to defendant's expert testimony without advance disclosure. Defendant has not shown the possibility of prejudice from such evidence, which appears to be merely recalculations of damages using different assumptions in the same models. If prejudice nevertheless becomes evident during trial, we will take steps to address such problems as they arise. Defendant's motion *in limine* is DENIED.

2. DEFENDANT'S MOTION *IN LIMINE* REGARDING CERTAIN TESTIMONY OF EILEEN SUPKO. We are concerned about this testimony, if its purpose is to estimate a time when the United States will comply with its contract obligation to accept nuclear waste. One concern is whether an expert could assist the court in making such a determination, which could only be an educated guess in any event. We asked that counsel stipulate 2010 as the date of compliance as it is the only date officially available. See, e.g., Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88 (2003) ("plaintiff and defendant . . . may stipulate that the repository will be available in 2010 as expected . . . ."). The parties should assume the 2010 date for the purposes of this trial. This would eliminate the need for speculative expert testimony and some of the alternative models. The "official" date is not so authoritative as one might prefer for such purposes. See, e.g., Office of Civilian Radioactive Waste Management: Waste Acceptance Issues, 59 Fed. Reg. 27,007-27,008 (May 25, 1994) ("[T]he Department currently projects that the earliest possible date for acceptance of waste for disposal at a repository is 2010.") (emphasis added). The parties should agree on a

means of preserving plaintiff's right to seek redress beyond 2010, if necessary. This would streamline trial and avoid speculation. The court remains available to assist counsel in this regard.

3. PLAINTIFF'S MOTION *IN LIMINE* CONCERNING THE TESTIMONY OF DR. NEUBERGER. The excerpts of Dr. Neuberger's deposition testimony included in the motion and the descriptions of his opinions are not proper expert testimony. Defendant asserts that plaintiff's experts will testify to a similar effect. We would deal with inappropriate expert testimony as it arose, if necessary.

4. HOLTEC DOCUMENTS. The documents that we reviewed *in camera* are highly sensitive for proprietary reasons. Whatever relevance they may have to defendant's case, it would be outweighed by the business risks of making them a part of this trial. We note that the documents are in the nature of bids or offers and none includes an executed contract. Plaintiff's counsel made the following representation at the February 4 hearing, Transcript page 19:

> [A]s a result of the government's breach of the contract, utilities around the country are actively in the process of negotiating contracts for the purchase of cask systems. They're moving to dry storage solutions. . . . [M]any of the utilities are constructing dry storage facilities, and part of the dry storage facility operation is the need to purchase cask[s] . . . .

Defendant agreed at the hearing yesterday that it may not need the Holtec materials for this trial, depending on plaintiff's means of proving its cost per cask.

Defendant filed a motion *in limine* to exclude testimony and evidence regarding pre-breach damages and for interest. Plaintiff raised this matter incidentally yesterday, but defendant did not address it. We assume that defendant has abandoned this argument or that the parties will discuss it during trial, if necessary.

Robert H. Hodges, Jr.
Judge

# FAX COVER SHEET


## DILWORTH PAXSON LLP

LibertyView
457 Haddonfield Road, Suite 700
Cherry Hill, New Jersey 08002
U.S.A

Telephone: (856) 663-8877
Fax: (856) 663-8855


**PLEASE DELIVER IMMEDIATELY!**

DATE: April 29, 2004

| | RECIPIENT(S) NAME: | FAX NUMBER: | COMPANY: |
|---|---|---|---|
| TO: | Sr. Judge James F. Merow | 202-219-9521 | U. S Court of Federal Claims |
| | Kevin B. Crawford, Esquire | 202-307-2503 | U. S. Department of Justice |
| | Robert Shapiro, Esquire | 202-682-1639 | Spriggs & Hollingsworth |
| | Victoria Strohmeyer, Esquire | 202-305-7643 | U.S. Department of Justice |

FROM: Francis P. Maneri

NO. OF PAGES: 14

CLIENT / MATTER: 20397/75174

USER ID NUMBER: 0867

COMMENTS: See attached letter to Senior Judge James F. Merow of this date.

**This will be the only form of delivery of the transmitted documents(s).**

IF YOU HAVE ANY PROBLEMS RECEIVING THIS MESSAGE OR DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL (856) 663-8877.

IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. WE WILL PAY THE POSTAGE. THANK YOU.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.